UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINE M. HILL,

                    Plaintiff,          1:17-CV-00672-MAT
          -v-                           **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.
_____

## INTRODUCTION

Christine M. Hill ("Plaintiff"), represented by counsel, brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded for further administrative proceedings, and Defendant's motion is denied.

## PROCEDURAL BACKGROUND

On July 11, 2013, Plaintiff protectively filed for DIB, alleging disability beginning February 15, 2011. Administrative Transcript ("T.") 63. The claim was initially denied on

November 22, 2013, and Plaintiff timely requested a hearing. T. 70-83. A hearing was conducted on January 6, 2016, in Buffalo, New York by administrative law judge ("ALJ") Robert T. Harvey. T. 28-61. Plaintiff appeared with her attorney and testified. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on February 10, 2016. T. 10-22. Plaintiff timely appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on May 24, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-5. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2016. T. 15.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 15, 2011. *Id*.

At step two, the ALJ determined that Plaintiff had the "severe" impairments of psoriatic arthritis and hypothyroidism. The ALJ also determined that Plaintiff's medically determinable impairment of asthma did not create a significant limitation and thus found it to be nonsevere. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 1.00 (Musculoskeletal System), 8.00 (Skin Disorders), and 9.00 (Endocrine Disorders). *Id*.

Before proceeding to step four, the ALJ assessed that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), with the following limitations: can stand/walk up to six hours in an eight-hour workday and sit for up to two hours in an eight-hour workday; no climbing ropes, ladders or scaffolds; can occasionally handle (gross manipulation; occasionally feel (skin receptors); occasionally push and/or pull with the upper extremities; and cannot work in areas with exposure to cold, excessive heat or commercial inks. T. 15-16.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as an insertion machine operator. T. 20.

At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through her date last insured, including the representative

occupations of mail room clerk, and cashier. T. 20-21. The ALJ accordingly found that Plaintiff had not been under a disability, as defined in the Act since the alleged onset date. T. 21.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted because the RFC finding is not supported by substantial evidence. In particular, Plaintiff argues: (1) there was no medical basis for the ALJ's RFC assessment; (2) the ALJ's credibility analysis does not explain why he found that her activities of daily living were inconsistent with her allegations of disability; and (3) the ALJ failed to provide "good reasons" for his rejection of treating medical source evidence, in violation of the treating physician rule. For the reasons discussed below, the Court finds the RFC determination is unsupported by substantial evidence, and remand for further administrative proceedings is required.

## I.    The Relevant Medical Opinions of Record

Plaintiff contends the ALJ's conclusion that Plaintiff retains the exertional RFC for light work is unsupported by substantial evidence. The record contains several medical opinions pertinent to Plaintiff's argument. These opinions are summarized below.

### A.    Opinion of Consultative Examiner, Dr. John Schwab

On October 29, 2013, Plaintiff received a consultative examination by Dr. John Schwab at the Administration's request. T. 256-59. Plaintiff reported she had suffered from psoriasis and dermatitis on her hands for the past six or seven years. Plaintiff reported the condition was cyclical, beginning with itching, then burning, then splitting before going dry and starting over again.

Plaintiff reported her pain was, at times, a 9 out of 10 on a scale of 1 to 10. T. 256. Plaintiff reported she cooked and cleaned six times per week, did laundry two to three times per week, and went shopping once per week. She performed daily childcare and was able to shower, bathe and dress herself. *Id*.

Upon examination, Plaintiff appeared to be in no acute distress. She was able to walk on heels and toes without difficulty and perform a full squat. Her right hand showed erythema on the MCP (metacarpophalangeal) joints. Her left hand showed the same, along with dry skin in the palmar area with some redness covering approximately thirty percent of the palm with several fissures. Plaintiff's left middle finger also had a small fissure. T. 257. Plaintiff had full grip strength, was able to button, zip, use Velcro with each hand, and tie a bow with both hands. All other examination findings were unremarkable. T. 258. Dr. Schwab diagnosed Plaintiff with psoriasis of the hands, hypothyroidism, and tobacco abuse. He opined Plaintiff had a mild restriction to prolonged handling of objects with both hands. *Id*.

In his decision, the ALJ summarized Dr. Schwab's findings and gave his opinion "some" weight without providing further explanation. T. 18.

**B.    Opinion of Treating Physician, Dr. Lynn A. Amarante**

On December 10, 2015, Plaintiff's treating physician, Dr. Lynn A. Amarante, completed a medical source statement. T. 389-92.

Dr. Amarante listed Plaintiff's diagnoses as psoriasis and psoriatic arthritis with a poor prognosis because Plaintiff refused to take the suggested treatment (Humira, a biologic drug). T. 389. In the past two years, Dr. Amarante noted Plaintiff had experienced skin lesions on multiple body sites that interfered with two or more joints and two extremities. Lesions appeared on the palms of Plaintiff's hands and the soles of both feet. Plaintiff experienced a loss of manual dexterity, skin fissures, inflammation, skin weeping and bleeding. Plaintiff also experienced pain, difficulty walking, easily irritated skin, skin blisters, scaling, redness, crusting, and cracking. *Id.* Dr. Amarante noted Plaintiff had shown little improvement with topical and intramuscular steroids and that her skin lesions had persisted for at least three months despite ongoing treatment. T. 390.

Dr. Amarante opined Plaintiff's condition contributed to several functional limitations. She opined Plaintiff could walk approximately one mile at one time without resting or experiencing severe pain. She could sit for more than two hours at one time, but could stand for only five minutes at one time before needing to change positions. Dr. Amarante further opined Plaintiff could stand or walk for less than two hours total in an eight-hour workday but was able to sit for at least six hours during an eight-hour workday. T. 390. Dr. Amarante opined Plaintiff could frequently twist and stoop but could rarely crouch or squat. She would be able

to reach forward and overhead without restriction, but she could only handle (grasp, turn and twist) objects five percent of the time with each hand and perform fine manipulations five percent of the time with each hand. T. 391. Dr. Amarante opined Plaintiff should avoid concentrated exposure to high humidity, fumes, odors, gases, dust, and sand. She opined Plaintiff should avoid all exposure to extreme cold and heat, extreme wetness and dryness, soldering fluxes, solvents and cleaners, metals, chemicals, glues, wool, rubber products, synthetic fibers, and working around food. Dr. Amarante also opined Plaintiff should avoid concentrated exposure to public contact and co-worker contact due to her skin condition. *Id.* Dr. Amarante opined Plaintiff's symptoms would interfere with her attention and concentration, likely causing her to be "off task" at least twenty-five percent of the time, but that Plaintiff was capable of low stress work as long as her skin was not affected. Finally, Dr. Amarante opined Plaintiff's impairments would likely cause "good days" and "bad days" and that she would be absent from work as a result of her impairments or treatment more than four days per month. T. 392.

In his decision, the ALJ gave Dr. Amarante's opinion "little" weight. He noted that Dr. Amarante's opinion stated Plaintiff "could sit, stand, and walk less than two hours in an eight-hour workday." T. 19. The ALJ reasoned that Dr. Amarante's opinion was entitled to only "little" weight because it reflected Plaintiff's

8

allegations more than the medical record and that there was little on record supporting the need to avoid stress or that Plaintiff would have any apparent lapses in attention or concentration. Furthermore, the ALJ noted that Dr. Amarante's opinion was not fully supported by the record and that it offered only partial assistance in understanding Plaintiff's RFC. *Id*.

### C. Opinion of Treating Physician Assistant, Colleen Vaccaro

On May 21, 2015, Registered Physician Assistant ("RPA") Colleen Vaccaro completed an RFC Assessment. T. 348-55. RPA Vaccaro noted Plaintiff's diagnoses of psoriasis and psoriatic arthritis. She opined Plaintiff could frequently lift and/or carry less than ten pounds, stand and/or walk with normal breaks for less than two hours total in an eight-hour workday, and had no limitation on total time sitting during an eight-hour workday, but she must periodically alternate between sitting and standing to relieve pain or discomfort. RPA Vaccaro explained that Plaintiff's psoriasis prevented her from lifting, grasping, or holding anything for any length of time. She also noted Plaintiff's psoriatic arthritis affected her joints, especially her knees, causing Plaintiff to need to regularly alternate between sitting and standing. T. 349. RPA Vaccaro also opined that the pain and weakness caused by Plaintiff's psoriatic arthritis limited her to being able to only occasionally climb ramps and stairs, ladders, ropes and scaffolds, and balance, and never being able to stoop, kneel, crouch, or

crawl. T. 350. RPA Vaccaro opined Plaintiff's cracking and peeling hands caused significant discomfort and strength limitations, including limitations in reaching in all directions, handling, fingering, and feeling. T. 351. She further opined Plaintiff should avoid all exposure to extreme heat and cold, wetness, vibration, and hazards when concerning Plaintiff's hands. T. 352.

The ALJ gave RPA Vaccaro's opinion "little" weight, noting that much of her opinion appeared out of proportion to the medical record and was influenced at least to some degree by Plaintiff's own allegations. He further reasoned that the treating notes on file did not justify the extensive limitations that RPA Vaccaro identified. T. 18.

## II. The ALJ's RFC Determination is Not Supported by Substantial Evidence

Plaintiff contends that the ALJ's finding that Plaintiff retains the RFC for light work is unsupported by substantial evidence. For the reasons set forth below, the Court agrees.

### A. The Opinion of Dr. John Schwab is Stale and Thus Cannot Constitute Substantial Evidence

Plaintiff first argues that the opinion of Dr. Schwab is stale and accordingly cannot amount to substantial evidence to support the ALJ's RFC determination. The Court agrees.

Stale medical opinions do not constitute substantial evidence in support an ALJ's findings. *Camille v. Colvin*, 104 F. Supp.3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x (2d Cir. 2016)

(summary order). While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent treatment notes indicating a claimant's condition has deteriorated may. *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, No. 13-CV-06309(MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded "great" weight to medical opinions rendered before plaintiff's second surgery).

Dr. Schwab's opinion was based on a one-time consultative examination that took place on October 29, 2013. T. 256. Although the record contains some reference to possible psoriatic arthritis prior to Dr. Schwab's examination (*see e.g.,* T. 221, 249), Plaintiff was not definitively diagnosed with the condition until July 14, 2015 - more than a year-and-a-half after Dr. Schwab's examination. T. 384. Furthermore, Dr. Schwab's examination report and opinion made no reference to possible psoriatic arthritis or any joint pain at all. *See* T. 256-59. At the time of Dr. Schwab's examination, Plaintiff's chief complaint was the psoriasis on her hands and the itching and pain associated with that condition. T. 256. Accordingly, Dr. Schwab's opinion, which contained no exertional limitations relating to joint pain or any consideration

of the impact of Plaintiff's psoriatic arthritis, was indisputably rendered stale by Plaintiff's subsequent diagnosis. *See Davis v. Berryhill*, No. 6:16-CV-06815(MAT), 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018) (opinions of consultative examiner and state agency reviewer were indisputably stale where they had been issued several years prior to the ALJ's decision and significant developments in plaintiff's medical history had occurred since that time); *Morgan v. Berryhill*, No. 1:15-cv-00449(MAT) 2017 WL 6031918, at *4 (W.D.N.Y. Dec. 5, 2017) (treating physician's medical assessment was properly afforded less than controlling weight where it was based on an incomplete record and rendered stale by plaintiff's subsequent surgery).

In his decision, the ALJ gave Dr. Schwab's opinion "some" weight - the greatest amount of weight afforded to any of the medical opinions of record. T. 18. The Court agrees with Plaintiff's contention that because the ALJ's rejected the other medical opinions of record and instead relied on Dr. Schwab's stale opinion which did not take Plaintiff's "severe" impairment of psoriatic arthritis into consideration, the RFC is not supported by substantial evidence. Accordingly, remand for further consideration of the impact of Plaintiff's psoriatic arthritis on her functional capabilities is appropriate.

**B.   The ALJ Failed to Properly Evaluate the Opinion of Plaintiff's Treating Physician, Dr. Lynn A. Amarante**

Plaintiff further argues the ALJ failed to properly evaluate Dr. Amarante's opinion pursuant to the treating physician rule. In particular, Plaintiff argues the ALJ failed to provide "good reasons" for his rejection of Dr. Amarante's opinion.

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). Where a treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is generally entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). A corollary to the treating physician rule is the "good reasons rule," based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2);). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

When determining the weight to afford a treating physician's opinion, the ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues". *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). The ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32). Nonetheless, the "good reasons" rule exists to "ensure that each denied claimant receives fair process." *Wilson v. Colvin*, 213 F. Supp.3d 478, 482 (W.D.N.Y. 2016) (internal citation omitted). "Accordingly, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given *denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based on the record." *Id.* (internal quotation marks omitted; emphasis in original).

In his decision, the ALJ accorded "little" weight to Dr. Amarante's opinion. The ALJ reasoned that Dr. Amarante's

opinion seemed to reflect Plaintiff's allegations more than it reflected the medical record, nothing that the record provided little support for Plaintiff's need to avoid stress or that she would have lapses in attention or concentration. T. 19. The ALJ further reasoned that Dr. Amarante's opinion was not fully supported by the record and offered only partial assistance in understanding Plaintiff's RFC.

The Court finds the ALJ's reasons for discounting the opinion of Dr. Amarante are unsupported by the record and thus, are not good reasons. In particular, the Court finds that Dr. Amarante's opinion that Plaintiff's symptoms would likely interfere with her attention and concentration is supported by numerous treatment notes from other providers. The pain associated with Plaintiff's psoriasis and psoriatic arthritis is well-documented throughout the record. *See e.g.*, T. 318 (Plaintiff treated for itching, burning and cracking rash on hands); T. 369 (Plaintiff reported pain throughout spinal axis, right sternoclavicular joint, right shoulder, left Achilles region, hands, knees, hips, feet and ankles); T. 373 (Plaintiff assessed for chronic back pain); T. 374 (Plaintiff reported pain that is present all of the time); T. 384 (Plaintiff reported widespread pain, swollen hands and feet, trouble grasping things and opening jars). Furthermore, the record contains several references to Plaintiff's memory difficulty and depression, which are associated with her hypothyroidism. *See e.g.*,

T. 277 (symptoms associated with Plaintiff's thyroid condition include confusion, difficulty concentrating, and memory difficulty); T. 326 (Plaintiff had stable fatigue and associated depression); T. 329 (Plaintiff was assessed with sleep disturbance and depression); T. 414 (Plaintiff reported fatigue, all over aches and pains, sleep disturbances and depression). The Court finds Plaintiff's repeated reports of fatigue, depression, and widespread pain to numerous treatment providers give ample support to Dr. Amarante's opinion Plaintiff's concentration and attention would be limited by her conditions. *See Wilson*, 213 F. Supp.3d 486-87 (ALJ's discounting of treating physician's opinion that plaintiff's pain would interfere with his ability to maintain attention and concentration because it was inconsistent with the record was improper where plaintiff reported pain to every treatment provider during the relevant period).

The Court further finds the ALJ's reasoning that Dr. Amarante's opinion reflects Plaintiff's subjective allegations more than the medical record does not constitute a good reason for rejecting her opinion. *See Green-Younger*, 335 F.3d at 107 (treating physician's partial reliance on plaintiff's subjective complaints "hardly undermine[d] his opinion as to [plaintiff's] functional limitations). As Plaintiff notes, psoriatic arthritis does not produce objective evidence in the form of imaging or a limited range of motion. In fact, the medical record includes

multiple treatment records and diagnostic tests from Rheumatology Consultants of WNY, P.C. and Southtowns Radiology Associates, LLC that noted normal imagery, but nonetheless established and maintained Plaintiff's diagnosis of psoriatic arthritis. *See* T. 369-85. This, coupled with Plaintiff's well-documented consistent subjective symptoms and complaints, which by all accounts seem to be fully accepted by her treating sources, support Dr. Amarante's opinion that Plaintiff would have lapses in concentration and attention. Accordingly, the Court finds the ALJ failed to provide good reasons for rejecting Dr. Amarante's opinion and remand is therefore required.

To the extent the Commissioner provides additional reasons Dr. Amarante's opinion was not entitled to controlling weight, the Court does not accept these after-the-fact justifications for rejecting the opinion. *See McCray v. Berryhill*, No. 6:17-cv-06478-MAT, 2018 WL 3386338, at *5 (W.D.N.Y. July 12, 2018) (rejecting the Commissioner's *post hoc* justifications for the weight applied to the opinion of plaintiff's treating physician). The Commissioner specifically argues it was RPA Vaccaro, who is not an "acceptable medical source," and not Dr. Amarante who actually completed the opinion in question, and that Dr. Amarante had only seen Plaintiff once before stamping her name to the opinion. However, the ALJ made no note of these reasons in his decision, and it would inappropriate for the Court to uphold the determination based upon

them. *See, e.g.*, *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept . . . counsel's *post hoc* rationalizations for agency action."). Furthermore, opinions and treatment notes drafted by nurse practitioners or physician's assistants and co-signed by a treating physician should be evaluated in accordance with the treating physician rule. *See Beckers v. Colvin*, 38 F. Supp.3d 362, 372 (W.D.N.Y. 2014); *Keith v. Astrue*, 553 F. Supp.2d 291, 301 (W.D.N.Y. 2008). Additionally, the Court notes that contrary to the Commissioner's assertion, the record shows Dr. Amarante saw Plaintiff on May 15, 2014, and July 30, 2014. T. 318-19. The record also shows Dr. Amarante was copied in on rheumatology treatment notes (*see e.g.,* T. 384-85) and requested additional services on Plaintiff's behalf. T. 388. Accordingly, the Court finds that the Commissioner's *post hoc* justifications are without merit.

The Court also notes that it appears the ALJ misread a portion of Dr. Amarante's medical opinion, which further supports remand. *See Casselbury v. Colvin*, 90 F. Supp.3d 81, 95 (W.D.N.Y. 2015) (remanding where ALJ improperly discredited consultative examiner's opinion based on his misinterpretation of the opinion); *Wojciechowski v. Colvin*, 967 F. Supp.2d 602, 610 (N.D.N.Y. 2013) (remanding in part for reconsideration of treating physician's opinion in light of the ALJ's misreading of a treatment note).

On December 10, 2015, Dr. Amarante opined Plaintiff could sit for at least six hours during an eight-hour workday. T. 390. In his decision, the ALJ summarized Dr. Amarante's opinion to include that Plaintiff "could sit, stand, and walk less than two hours in an eight-hour workday." T. 19. This is a clear misreading of Dr. Amarante's opinion. Moreover, the ALJ appears to have relied on this misreading for support of his RFC finding, which included the limitation of "sit[ting] for up to 2 hours in an eight-hour workday." T. 16. Where "an ALJ misreads a critical piece of evidence in the record, and then relies on his error in reaching his opinion, the decision cannot be said to be supported by 'substantial evidence.'" *McHugh v. Astrue*, No. 11-CV-00578(MAT), 2013 WL 4015093 at *9 (W.D.N.Y. Aug. 6, 2013). Accordingly, the Court finds remand is further warranted on this basis.

For all the foregoing reasons, the Court finds that the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Amarante. Accordingly, the Court finds that remand is appropriate.

## III. The ALJ Erred by Applying an Incorrect Standard to the Credibility Analysis

Plaintiff also argues the ALJ's failed to evaluate Plaintiff's credibility pursuant to the correct regulatory standard and further erred by failing to fully explain why Plaintiff's activities of daily living supported the RFC finding. The Court finds the ALJ's

credibility analysis is based on an inappropriate application of the regulatory standard, further warranting remand.

The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms. *See* 20 C.F.R. § 404.1529.[1] The ALJ must first consider whether the claimant has a medically determinable impairment that could reasonably be expected to cause the alleged symptoms. If the ALJ determines the claimant has an impairment, he or she must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If those statements are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's credibility, considering the details of the record as a whole. *See id.*; *Acevedo v. Colvin*, 20 F. Supp.3d 377, 390 (W.D.N.Y. 2014).

The ALJ found Plaintiff lacked credibility because her subjective complaints were not substantiated by the medical evidence. *See* T. 17 (stating that "the medical record does not justify finding more erosions in functioning than those indicated above"). However, "[t]o require plaintiff to fully substantiate her symptoms with medical evidence would be both in abrogation of the regulations and against their stated purpose." *Hogan v. Astrue*, 491

---

[1] The Social Security Administration updated its guidance on evaluating symptoms in disability claims, effective March 27, 2017. The prior version of 20 C.F.R. § 404.1529, effective June 13, 2011, to March 26, 2017, is the version discussed above and the version applicable to the present case.

F. Supp.2d 347, 353 (W.D.N.Y. 2007) (citing *Castillo v. Apfel,*
No. 98 CIV. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)
("[I]t is improper for an ALJ to reject a claimant's allegations of
disabling pain on the ground that objective, clinical findings do
not establish a cause for such intense pain.") (citations
omitted)). Thus, to the extent the ALJ analyzed Plaintiff's
credibility based on the assumption that her subjective complaints
must be fully supported by the medical record in order to be
accepted, the ALJ applied an inappropriate regulatory standard.
Accordingly, the Court finds remand is warranted for proper
application of the standard.

The ALJ also relied on Plaintiff's ability to perform certain
activities of daily living to discredit the alleged severity of her
symptoms. *See* T. 20 (noting she was able to cook, clean, launder,
shower, bathe, dress, and perform childcare). While this is an
appropriate consideration when evaluating a claimant's subjective
complaints, the ability to engage in simple daily activities does
not warrant discrediting her allegations of pain or disabling
symptoms unless there is some indication that the activities
themselves speak to an ability to perform substantial gainful
employment on a regular and continuing basis. *See Hilsdorf v.
Commissioner of Social Sec.*, 724 F. Supp.2d 330, 352 (E.D.N.Y.
2010) (finding that there was nothing to suggest that plaintiff
"engaged in any of these [daily] activities for sustained periods

comparable to those required to hold [even] a sedentary job . . . The mere fact that [the] [p]laintiff engaged in these activities, standing alone, is meaningless") (*citing Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). Furthermore, Plaintiff provided substantial context at the hearing regarding her ability to perform certain daily activities that the ALJ failed to note in his decision. In particular, Plaintiff testified that when she has blisters and burning in her hands, she is unable to do many of her typical activities of daily living and depends on her boyfriend and son to complete them. T. 49. Accordingly, the Court further finds the ALJ's credibility finding is unsupported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Doc. 13) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's opposing motion for judgement on the pleadings (Doc. 16) is denied. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

Honorable Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    March 14, 2019
          Rochester, New York